UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID SELLERS,

        Plaintiff,

       v.

ROYAL BANK OF CANADA, RBC USA
HOLDCO CORPORATION, RBC
CAPITAL MARKETS CORPORATION,
LLC, and JOHN DOES 1-5,

        Defendants.

Case No. 12-Civ-1577 (KBF)

**Document Electronically Filed**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

By:

James P. Walsh, Esq.
August W. Heckman, Esq.
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
Tel:  (609) 919-6696

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF UNDISPUTED FACTS .............................................................. 3

ARGUMENT ............................................................................................................ 3

I.      LEGAL STANDARD FOR SUMMARY JUDGMENT.................................. 3

II.     THE UNDISPUTED FACTS CONCERNING PLAINTIFF'S CONSULTING ARRANGEMENT WITH RBC ESTABLISH THAT HE WAS AN INDEPENDENT CONTRACTOR.................................................................... 5

III.    PLAINTIFF'S ERISA CLAIM IS WITHOUT MERIT BECAUSE HE ADMITS THAT HE FAILED TO EXHAUST ADMINISTRATIVE PROCEDURES AND, EVEN IF HE HAD, THE PLANS SPECIFICALLY EXCLUDE INDEPENDENT CONTACTORS AND INDIVIDUALS CLASSIFIED AS INDEPENDENT CONTRACTORS. .................................................................................................. 14

IV.    PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE OF AGE DISCRIMINATION. .................................................................................... 16

V.     PLAINTIFF CANNOT REBUT RBC'S LEGITIMATE, NON-DISCRIMINATORY REASONS............................................................... 18

VI.    PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE HE WAS NOT SUBJECTED TO ANY ADVERSE ACTION. ............................................. 21

VII.   PLAINTIFF CANNOT SUSTAIN A CLAIM FOR EMOTIONAL DISTRESS OR PUNITIVE DAMAGES................................................................................... 22

        A.    Plaintiff's Evidence Of Emotional Distress Is Patently Insufficient To Support An Award of Damages........................................................ 22

        B.    Plaintiff Offers No Evidence To Support An Award Of Punitive Damages ....... 23

CONCLUSION........................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Alleva v. N.Y.C. Dep't of Investigation,
     696 F. Supp. 2d 273 (E.D.N.Y. 2010), aff'd, 413 F. App'x 361 (2d Cir. 2011) ....................17

Alvarez v. Nicholson,
     No. 03-4173, 2005 U.S. Dist. LEXIS 45744 (S.D.N.Y. Aug. 3, 2005)..................................20

Ashton v. Pall Corp.,
     32 F. Supp. 2d 82 (E.D.N.Y. 1999) .......................................................................................19

Barfield v. N.Y.C. Health & Hosps. Corp.,
     537 F.3d 132 (2d Cir. 2008)......................................................................................................5

Bay v. Times Mirror Magazines, Inc.,
     936 F.2d 112 ( 2d Cir. 1991)...................................................................................................19

Brock v. Superior Care, Inc.,
     840 F.2d 1054 (2d Cir. 1988)................................................................................................5, 6

Browning v. Ceva Freight, LLC,
     885 F. Supp. 2d 590 (E.D.N.Y. 2012) ......................................................................7, 9, 10, 12

Burlington N. & Santa Fe Ry. Co. v. White,
     548 U.S. 53 (U.S. 2006)....................................................................................................21, 22

Cannon v. Douglas Elliman, LLC,
     No. 06-7092, 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007) .....................................................8

Caravantes v. 53rd St. Partners, LLC,
     No 09-7821, 2012 WL 3631276 (S.D.N.Y. Aug. 23, 2012)..............................................23, 24

Clark v. Gotham Lasik, PLLC,
     No. 11-01307, 2013 WL 4437220 (S.D.N.Y. Aug. 20, 2013)..................................................24

Clesi v. Zinc Corp.,
     No. 01-374, 2001 WL 1223456 (N.D.N.Y. Oct. 11, 2001) .......................................................9

Courtney v. City of New York,
     20 F. Supp. 2d 655 (S.D.N.Y. 1998).......................................................................................22

Curto v. Edmundson,
     392 F.3d 502 (2d Cir. 2004).....................................................................................................20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Davenport v. Harry N. Abrams, Inc.,
    249 F.3d 130 (2d Cir. 2001)...................................................................15

Davis v. Peake,
    No. 08-3570, 2011 U.S. Dist. LEXIS 107380 (S.D.N.Y. Sept. 20, 2011),
    aff'd, 505 F. App'x 67 (2d Cir. 2012)...................................................17

Deboissiere v. Am. Modification Agency,
    No. 09-2316, 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010)...................................11

Dent v. U.S. Tennis Ass'n,
    No. 08-1533, 2011 WL 308417 (E.D.N.Y. Jan. 27, 2011) .....................................19

DeSouza v. EGL Eagle Global Logistics LP,
    596 F. Supp. 2d 456 (D. Conn. 2009)......................................................9

Dole v. Amerilink,
    729 F. Supp. 73 (E.D. Mo. 1990)..........................................................11

Downes v. J.P. Morgan Chase & Co.,
    No. 03-8991, 2006 WL 785278 (S.D.N.Y. Mar. 21, 2006)..................................15

Edwards v. Schrader-Bridgeport Int'l, Inc.,
    205 F. Supp. 2d 3 (N.D.N.Y. 2002) ........................................................14

EEOC v. Zippo Mfg. Co.,
    713 F.2d 32 (3d Cir. 1983)................................................................11

Eisenberg v. Advance Relocation & Storage, Inc.,
    237 F.3d 111 (2d Cir. 2000)..............................................................10

Farias v. Instructional Sys., Inc.,
    259 F.3d 91 (2d Cir. 2001)................................................................23

Fitzpatrick v. New York Cornell Hosp.,
    No. 00-8594, 2003 WL 102853 (S.D.N.Y. Jan. 9, 2003) .......................................4

Frishberg v. Esprit de Corp.,
    778 F. Supp. 793 (S.D.N.Y. 1991) ........................................................11

Gaffney v. Dep't of Info. Tech. & Telecomm'ns,
    536 F. Supp. 2d 445 (S.D.N.Y. 2008).....................................................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Grant v. Roche Diagnostics Corp.,
    No. 09-1540, 2011 U.S. Dist. LEXIS 79994 (E.D.N.Y. July 20, 2011).....................................17

Greenbaum v. Handelsbanken,
    67 F. Supp. 2d 228 (S.D.N.Y. 1999).......................................................................................23

Gross v. FBL Fin. Servs., Inc.,
    557 U.S. 167 (2009)................................................................................................................16

Grossman v. Dillard Dep't Stores, Inc.,
    109 F.3d 457 (8th Cir. 1997) ............................................................................................18, 19

Hart v. Rick's Cabaret Int'l, Inc.,
    No. 09-3043, 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013) ....................................................6

Hicks v. Baines,
    593 F.3d 159 (2d Cir. 2010)......................................................................................................4

Jackson v. NYS Dep't of Labor,
    No. 09-6608, 2013 U.S. Dist. LEXIS 20511 (S.D.N.Y. Feb. 6, 2013)......................................4

Katt v. City of New York,
    151 F. Supp. 2d 313 (S.D.N.Y. 2001),
    aff'd in relevant part sub nom. Krohn v. New York City Police Dep't,
    60 F. App'x 357 (2d Cir. 2003) ..............................................................................................23

Kelderhouse v. St. Cabrini Home,
    259 A.D.2d 938 (3d Dep't 1999) ............................................................................................21

Kesselman v. Rawlings Co.,
    668 F. Supp. 2d 604 (S.D.N.Y. 2009)....................................................................................15

Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    No. 10-2603, 2011 1453791 (S.D.N.Y. Apr. 13, 2011)..........................................................13

Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    No. 10-2603, 2011 WL 1453791 (S.D.N.Y. Apr. 13, 2011) ...................................................12

Kuebel v. Black & Decker Inc.,
    643 F.3d 352 (2d Cir. 2011)......................................................................................................6

Leacock v. Nassau Health Care Corp.,
    No. 08-2401, 2013 WL 4899723 (E.D.N.Y. Sept. 11, 2013) .................................................22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Lee v. Coughlin,
  902 F. Supp. 424 (S.D.N.Y. 1995) ................................................................5

Lee v. Glessing,
  51 F. App'x 31 (2d Cir. 2002) .....................................................................16

Legeno v. Douglas Elliman, LLC,
  311 F. App'x 403 (2d Cir. 2009) ............................................................8, 16

Lewis v. Hill,
  No. 97-3213, 2005 WL 292748 (S.D.N.Y. Feb. 8, 2005).........................19

Lorenzo v. St. Luke's –Roosevelt Hosp. Ctr.,
  837 F. Supp. 2d 53 (E.D.N.Y. 2011) ........................................................19

Martin v. Gingerbread House, Inc.,
  977 F.2d 1405 (10th Cir. 1992) .................................................................22

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1986).....................................................................................4

Mavrommatis v. Carey Limousine Westchester, Inc.,
  476 F. App'x 462 (2d Cir. 2011) ...............................................................19

McDonnell Douglas Corp. v. Green,
  411 U.S. 792 (1973)...................................................................................16

McLean v. Garage Mgmt. Corp.,
  No. 10-3950, 2012 WL 1358739 (S.D.N.Y. Apr. 19, 2012) ......................6

McNally v. Yarnall,
  764 F. Supp. 838 (S.D.N.Y. 1991) ............................................................10

Murray v. New York,
  604 F. Supp. 2d 581 (W.D.N.Y. 2009) .......................................................5

Nationwide Mut. Ins. Co. v. Mortensen,
  606 F.3d 22 (2d Cir. 2010).........................................................................14

O'Neill-Marino v. Omni Hotels Mgmt. Corp.,
  No. 99-3793, 2001 WL 210360 (S.D.N.Y. Mar. 2, 2001).........................13

# TABLE OF AUTHORITIES
(continued)

Page(s)

Pasha v. William M. Mercer Consulting, Inc.,
  No. 00-8362, 2004 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 2, 2004),
  aff'd, 135 F. App'x 489 (2d Cir. 2005)...................................................................21

Ruhling v. Newsday, Inc.,
  No. 04-2430, 2008 WL 2065811 (E.D.N.Y. May 13, 2008)....................................23

Ruszkowski v. Kaleida Health Sys.,
  422 F. App'x 58 (2d Cir. 2011) .......................................................................16, 17

Schwarz v. Nat'l Van Lines, Inc.,
  375 F. Supp. 2d 691 (S.D.N.Y. 2005).....................................................................6

Schwind v. EW & Assocs., Inc.,
  357 F. Supp. 2d 691 (S.D.N.Y. 2005).....................................................................8

Sheridan v. N.Y. Life Inv. Mgmt., LLC,
  No. 09-4746, 2012 U.S. Dist. LEXIS 18525 (S.D.N.Y. Feb. 9, 2012)....................16

Short v. Manhattan Apts, Inc.,
  916 F. Supp. 2d 375,402 (S.D.N.Y. 2012)............................................................24

Shortt v. Congregation KTI,
  No. 10-2237, 2013 U.S. Dist. LEXIS 4094 (S.D.N.Y. Jan. 9, 2013) ......................17

Sotomayor v. City of New York,
  862 F. Supp. 2d 226 (E.D.N.Y. 2012) ..................................................................16

Syrnik v. Polones Constr. Corp.,
  918 F. Supp. 2d 262 (S.D.N.Y. 2013).....................................................................23

Thompson v. DDB Needham Chicago, Inc.,
  No. 95-7114, 1996 WL 392165 (N.D. Ill. July 11, 1996) ......................................11

United Air Lines v. Evans,
  431 U.S. 553 (U.S. 1977).....................................................................................20

Velasquez v. Goldwater Mem'l Hosp.,
  88 F. Supp. 2d 257 (S.D.N.Y. 2000).....................................................................18

Velu v. Velocity Express, Inc,
  666 F. Supp. 2d 300 (E.D.N.Y. 2009) ...........................................................8, 9, 10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

VTA Mgmt. Servs., Inc. v. United States,
No. 01-0145, 2004 WL 3199677 (E.D.N.Y. Dec. 14, 2004)....................................................7

Walsh v. NBC,
No. 83-6102, 1987 WL 16131 (S.D.N.Y. Jan. 7, 1987) ...........................................................17

Witkowich v. Gonzales,
541 F. Supp. 2d 572 (S.D.N.Y. 2008),
aff'd sub nom. Witkowich v. U.S. Marshals Serv., 424 F. App'x 20 (2d Cir. 2011) ..............19

Young v. Cooper Cameron Corp.,
586 F.3d 201 (2d Cir. 2009)......................................................................................................6

Zdorenko v. Meow Inc.,
No. 12-671, 2013 U.S. Dist. LEXIS 99258 (S.D.N.Y. July 11, 2013) ......................................4

Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP,
869 F. Supp. 2d 378 (S.D.N.Y. 2012).....................................................................................17

### STATUTES

29 U.S.C. § 201 *et seq*..............................................................................................................2

29 U.S.C. § 207(a) .....................................................................................................................12

29 U.S.C. § 255(a) .......................................................................................................................6

New York Labor Law, § 160, *et seq*..........................................................................................2

### OTHER AUTHORITIES

29 C.F.R. § 541.200(a)...............................................................................................................12

29 C.F.R. § 541.200(a)(2)-(3) ....................................................................................................13

29 CFR § 541.400 ......................................................................................................................12

29 CFR § 541.601 ......................................................................................................................12

29 C.F.R. § 541.601(a)...............................................................................................................13

29 C.F.R. § 541.601(c)...............................................................................................................13

Fed. R. Civ. P. 56(a) ...................................................................................................................4

## PRELIMINARY STATEMENT

From approximately August 2006 through February 2009, Plaintiff David Sellers ("Plaintiff"), on behalf of his consulting company Risk Management Consulting Services, LLC ("RMCS"), contracted with Defendants Royal Bank of Canada and RBC Capital Markets Corporation[1] ("RBC") to provide consulting services under a series of successively-renegotiated consulting agreements.  Plaintiff admits that for the first nineteen (19) months of the engagement, from August 2006 through February 2008, he in fact was an independent contractor pursuant to the agreements.  It is only after February 2008, when RMCS re-negotiated terms concerning payment, notice, and scope with RBC's Corporate Banking group that Plaintiff contends he really became an employee, but after which RBC misclassified him by continuing to treat him as a contractor.  This contention is based on Plaintiff's subjective belief that "what I did in corporate banking [was not] a project."

Plaintiff is wrong.  Plaintiff's (mis)conception of his independent contractor relationship with RBC ignores several key facts, namely:  (1) he voluntarily formed a consulting company, RMCS; (2) RMCS, through Plaintiff, negotiated and signed an independent contractor consulting agreement with RBC and re-negotiated that contractual relationship *thirteen times* – never once objecting to Plaintiff's non-employee status; (2) Plaintiff filed tax returns in 2008-2009 each year noting RMCS's continuing existence and seeking the benefit of business tax deductions not otherwise available to someone who was acting as an RBC employee, as Plaintiff now claims he was really doing; (3) Plaintiff submitted monthly invoices to RBC for his services (explicitly referencing the applicable "project" and referring to the independent contractor consulting agreement) and was compensated outside the regular payroll process, as directed by Plaintiff

himself; (4) Plaintiff had no traditional title at RBC; (5) Plaintiff received no benefits from RBC;

(6) Plaintiff had no signing authority at RBC; (7) at all times Plaintiff then and now advertised

himself as "sole proprietor" RMCS on his resume and to the world at-large through LinkedIn; (8)

Plaintiff had no set schedule; (9) Plaintiff was not given annual performance reviews; (10)

RMCS controlled whether it earned a profit or loss each month; and (11) most tellingly, ***RMCS***

***performed work for competing financial institutions while under contract with RBC***

(something employees are prohibited from doing).

Despite these overwhelming and indisputable facts, Plaintiff now claims that he was

misclassified pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the

New York Labor Law, § 160, *et seq*. ("NYLL"). Based on the fallacy that he was an "employee"

Plaintiff then bootstraps claims under the Employment Retirement Income Security Act of 1974

("ERISA"), the Age Discrimination in Employment Act ("ADEA"), the New York State Human

Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). Each of

these unconvincing claims fails as a matter of law for ***multiple*** reasons, including:

### Misclassification

- Plaintiff's claims under the FLSA are time-barred.

- Even if timely, the relevant factors under both the FLSA and NYLL overwhelmingly weigh in favor of independent contractor status (as highlighted above).

- Even if found to be an employee under the FLSA and NYLL, Plaintiff was exempt from overtime requirements and there was no minimum wage violation.

### ERISA

- Plaintiff's claim for ERISA benefits fails because he admittedly did not exhaust administrative remedies or even file a claim for such benefits.

---

[1]     The correct legal name of the current business entity involved is RBC Capital Markets, LLC, which succeeded its predecessor organization, RBC Capital Markets Corporation.

- Even if Plaintiff had exhausted his administrative remedies, the Plans expressly exclude from their definition of eligible participants those individuals classified by RBC as independent contractors.

### Age Discrimination

- Plaintiff's ADEA and NYHRL claims fail because those statutes do not apply to independent contractors.

- Plaintiff cannot prove a *prima facie* case of age discrimination because he admittedly never applied for an open position.

- Plaintiff cannot prove a *prima facie* case of age discrimination because the applicable decision-maker is in the same protected class and was the same decision-maker who initially engaged Plaintiff/RMCS' consulting services for Municipal Finance.

- Plaintiff cannot rebut RBC's legitimate non-discriminatory business reasons for no longer renewing his independent contractor agreement, let alone prove that his age was a motivating or "but for" reason behind the decision.

Finally, Plaintiff alleges that RBC retaliated against him through a letter in which RBC reserved its right under the consulting agreement to seek indemnification from RMCS. This claim fails, too, because no reasonable person in Plaintiff's position would be dissuaded from pursuing his then-pending EEOC charge, particularly in view of the undisputed facts that RBC never sought indemnification under the Agreement and soon thereafter waived its right to do so.

Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's claims in their entirety.

## STATEMENT OF UNDISPUTED FACTS

Defendants incorporate herein their Local Rule 56.1 Statement of Undisputed Material Facts ("SOMF").

## ARGUMENT

### I.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is to be granted where, as here, the record evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  Stated another way, if the evidence in the record "could not lead a

. . . trier of fact to find for the non-moving party, there is no genuine issue for trial," and the

motion should be granted.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587

(1986) (internal quotations and citation omitted).  "Once the moving party has asserted facts

showing that the non-movant's claims cannot be sustained, the opposing party must "set out

specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or

denials" contained in the pleadings." <u>Jackson v. NYS Dep't of Labor</u>, No. 09-6608, 2013 U.S.

Dist. LEXIS 20511, *7 (S.D.N.Y. Feb. 6, 2013) (Forrest, J.) (citing Fed. R. Civ. P. 56(e)); <u>see</u>

<u>also</u> <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) ("A party may not rely on mere

speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine

issue of material fact where none would otherwise exist.") (citations omitted).  "Only disputes

over material facts—<i>i.e.</i>, 'facts that might affect the outcome of the suit under the governing

law'—will properly preclude the entry of summary judgment." <u>Jackson</u>, 2013 U.S. Dist. LEXIS

20511, *8 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u>

<u>Matsushita</u>, 475 U.S. at 586 (stating that the nonmoving party "must do more than simply show

that there is some metaphysical doubt as to the material facts").  "[E]ven a <i>pro se</i> plaintiff must

offer some evidence that would defeat a motion for summary judgment." <u>Zdorenko v. Meow</u>

<u>Inc.</u>, No. 12-671, 2013 U.S. Dist. LEXIS 99258, at *5-6 (S.D.N.Y. July 11, 2013) (Forrest, J.)

(granting summary judgment) (citing <u>Saldana v. Local 32B-32J SEIU</u>, No. 03-1853, 2005 U.S.

Dist. LEXIS 464, at *4 (S.D.N.Y. 2005) ("Even a <i>pro se</i> plaintiff [] cannot withstand a motion

for summary judgment by relying merely on the allegations of a complaint.")); <u>see also</u>

<u>Fitzpatrick v. New York Cornell Hosp.</u>, No. 00-8594, 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9,

4

2003) ("proceeding *pro se* does not otherwise relieve [plaintiff] from the usual requirements of summary judgment"); Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (holding that a "*pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment"). Here, Plaintiff has not – and cannot – proffer any *evidence*, other than his own self-serving and unsubstantiated *allegations*, to support his claims. Accordingly, there are no genuine issues of material fact and Defendants' motion for summary judgment should be granted in its entirety.

## II. THE UNDISPUTED FACTS CONCERNING PLAINTIFF'S CONSULTING ARRANGEMENT WITH RBC ESTABLISH THAT HE WAS AN INDEPENDENT CONTRACTOR.

Plaintiff alleges a number of facts that, in his view, support his position that he was an employee of RBC. Am. Compl., ¶39.  These factors appear to be derived from the twenty-factor test developed by the Internal Revenue Service. See Murray v. New York, 604 F. Supp. 2d 581, 586 (W.D.N.Y. 2009) (discussing IRS's twenty-factor test).  The IRS test is not controlling under the FLSA and NYLL.  Rather, courts in the Second Circuit apply an "economic reality test" when making the determination of whether an individual is an employee or an independent contractor under the FLSA. Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008).  "The ultimate concern [under the FLSA] is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988).

"In applying the economic reality test, a court must consider:  (1) the degree of the employer's control over the worker; (2) the worker's opportunity for profit or loss and his investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business." Schwarz v. Nat'l Van Lines, Inc., 375 F.

Supp. 2d 691, 700 (S.D.N.Y. 2005) (citation omitted).  "No one of these factors is dispositive; rather, the test is based on a totality of the circumstances." Brock, 840 F.2d at 1059.  A similar "control test" applies to claims under the NYLL, including "whether the worker: (1) worked at his/her own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." Hart v. Rick's Cabaret Int'l, Inc., No. 09-3043, 2013 WL 4822199, at *16 (S.D.N.Y. Sept. 10, 2013).  "Although 'substantially similar' to the FLSA, … the common law focuses more on 'the degree of control exercised by the purported employer,' as opposed to the 'economic reality of the situation.'" Id., at * 16 (quotations omitted).  However, "[n]otwithstanding the separate NYLL inquiry … [t]here is general support for giving [the] FLSA and the New York Labor Law consistent interpretations." Id., *17 (quotation omitted) (citing cases).  Given the consistent treatment of the FLSA and NYLL factors, Defendants analyze the relevant factors concurrently below.

As an initial matter, however, Plaintiff's misclassification claim under the FLSA is time-barred under the applicable two-year statute of limitations. Kuebel v. Black & Decker Inc., 643 F.3d 352, 358 (2d Cir. 2011).[2]  Plaintiff contends that RBC began treating him as an employee, rather than an independent contractor, as of February 4, 2008, and that he continued working for

---

[2]     The FLSA only allows a three-year limitations period for a willful violation.  See 29 U.S.C. § 255(a).  Plaintiff bears the burden of proof to establish that a violation of the FLSA was willful. Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009) ("The burden is on the employee to show willfulness.").  Here, Plaintiff can point to no record evidence demonstrating the requisite willfulness by RBC.  Rather, he simply relies on his own conclusory assertion that because the Bank violated the FLSA, such violation must be willful. See Am Compl., Claims For Relief, at 1.  Such an assertion "is insufficient to meet [his] burden." McLean v. Garage Mgmt. Corp., No. 10-3950, 2012 WL 1358739, at *8 (S.D.N.Y. Apr. 19, 2012) (mere fact that defendant violated FLSA did not, without more, render violation willful).

RBC as an employee until February 29, 2009.  <u>See</u> Am. Compl., ¶¶29, 38.  Plaintiff filed his

original Complaint on March 5, 2012[3], well beyond the two-year limit (*e.g.*, February 29, 2011).

<u>See</u> Dkt. No. 1.  Therefore, all of Plaintiff's FLSA claims are time-barred (the NYLL claims are

subject to a six-year statute of limitations).  Regardless, under any assessment of the facts,

Plaintiff's relationship with RBC was that of an independent contractor, not an employee.

- **Plaintiff worked at his own convenience and with an admitted degree of independence.**

Plaintiff had no set schedule at RBC and took vacation and personal days at his own

convenience, often declining to provide RBC management with notice of his planned days off --

*citing his status as a consultant.*  SOMF ¶ 54; <u>see also</u> <u>VTA Mgmt. Servs., Inc. v. United States</u>,

No. 01-0145, 2004 WL 3199677, at *8 (E.D.N.Y. Dec. 14, 2004) (fact that individuals set their

own hours and could take time off without approval favored independent contractor finding).

Plaintiff was never required to arrive or depart the office at any particular time, take lunch or rest

breaks, or clock in or out.  <u>Id.</u>, ¶50; <u>see</u> <u>Browning v. Ceva Freight, LLC</u>, 885 F. Supp. 2d 590,

602 (E.D.N.Y. 2012) ("The fact that an independent contractor is required to be at a job or at a

facility at a certain time does not eliminate his status as an independent contractor.").  Further, to

the extent Plaintiff worked from RBC's offices during business hours, it was merely a function

of his project assignments and the fact that others with whom he interacted – third-parties and

within RBC – worked during business hours, rather than a scheduling requirement of RBC.

SOMF ¶52.

- **Plaintiff was free to engage in work for other banks, which he did, and controlled his opportunity to make a profit or loss.**

While he was under contract with RBC, Plaintiff – through his consulting company

RMCS – simultaneously entered into another consulting agreement with Credit Suisse Securities

---

[3]         Plaintiff never served Defendants with his original Complaint.

(USA) LLC, *a competing bank*, to provide consulting services for a period of three months. SOMF ¶ 30.  RBC specifically prohibits employees from working outside RBC without express written permission.  SOMF ¶ 34. Plaintiff did not request any permission, nor did RBC require any such permission, further demonstrating that neither he nor RBC considered him to be anything but an independent contractor.  SOMF ¶ 35.  Legeno v. Douglas Elliman, LLC, 311 F. App'x 403, 405 (2d Cir. 2009) (holding plaintiffs were independent contractors because they were "free to engage in other employment"); Cannon v. Douglas Elliman, LLC, No. 06-7092, 2007 WL 4358456, at *1 (S.D.N.Y. Dec. 10, 2007) (finding no employment relationship where plaintiff was "free to accept other employment");  Velu v. Velocity Express, Inc, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009) (fact that "Plaintiff may work for other companies while continuing his relationship with [defendant]" favored independent contractor status).  In addition, the negotiated pay structure of the consulting agreement meant that Plaintiff controlled his own ability to generate a profit or take a loss.  If he logged hours in excess of the weekly capped fee, it resulted in a "loss" to RMCS.  SOMF ¶ 28.  By the same token, meeting the balance of hours under the weekly capped fee resulted in a "profit" to RMCS.  Id.

- **Plaintiff had a high degree of skill and independent initiative.**

Plaintiff alleged in his own pleading that he "assumed transactions of increasing complexity and importance for the bank over time, including relatively complex and sophisticated 'Pre-Paid Gas' financings and, most noteworthy, the . . . re-structuring of a large bank-syndicated liquidity and credit enhancement facility for the State of California[.]"  Am. Compl., ¶53.  Plaintiff further testified that he "was entrusted to operate with a degree of independence and responsibility" for his accounts.  SOMF ¶ 29; see Schwind v. EW & Assocs., Inc., 357 F. Supp. 2d 691, 702 (S.D.N.Y. 2005) (finding independent contractor status where plaintiff exercised a high degree of skill and "was responsible for many of defendants' major

clients including initial contact and the handling of their accounts"); <u>DeSouza v. EGL Eagle Global Logistics LP</u>, 596 F. Supp. 2d 456, 465 (D. Conn. 2009) (finding independent contractor status where plaintiff's work "requires training and calls for the exercise of independent judgment").

- **Plaintiff worked under a series of short-term contracts, limiting the duration of his relationship with RBC.**

Though Plaintiff's relationship with RBC lasted from 2006 to February 2009, it persisted under a series of discrete, short-term contracts – none lasting over three months. SOMF ¶ 26; see <u>Clesi v. Zinc Corp.</u>, No. 01-374, 2001 WL 1223456, at *4 (N.D.N.Y. Oct. 11, 2001) (holding that even though relationship lasted over a six-year period, the year-to-year contracts between the parties weighed in favor of independent contractor finding); <u>DeSouza</u>, 596 F. Supp. 2d at 465 (holding that "a one-year contract, which was renewable for successive one-year terms" weighed in favor of independent contractor status).

- **Plaintiff was not an integral part of RBC's business.**

Plaintiff testified that RBC "needed an experienced banker . . .within the municipal finance team. I was an experienced banker." SOMF ¶ 18. RBC could have brought in any "experienced banker" to consult on the projects for which Plaintiff was engaged by RBC. <u>Velu</u>, 666 F. Supp. 2d at 307 (fact that plaintiff's work was interchangeable with work of other contractors favored independent contractor finding); see also <u>Browning</u>, 885 F. Supp. 2d at 610 ("even if considered integral, the Plaintiffs were easily replaceable"). Plaintiff was not given a business card, was not introduced to clients as an employee, held no job title and had no authority to commit RBC's balance sheet. SOMF ¶¶ 44-46. At any rate, this factor does not weigh heavily in the analysis and does not preclude a finding that he was an independent contractor. See, e.g., <u>Browning</u>, 885 F. Supp. 2d at 610 (holding that "this factor only weighs

9

slightly in favor of finding that the Plaintiffs should qualify as employees under the FLSA, and would not prevent this Court from finding, as a matter of law, that the Plaintiffs are independent contractors").

- **Plaintiff received no fringe benefits.**

Plaintiff admits he did not receive paid vacation or sick days during his engagement with RBC.  SOMF ¶ 48.  Indeed, he averred in his pleadings that he did not receive the "benefits of employment provided to employees doing comparable work," Am. Compl., ¶14, and admitted during his deposition that he did not receive even a "flu shot" or other "typical HR type benefits."  SOMF ¶ 49; see McNally v. Yarnall, 764 F. Supp. 838, 841 (S.D.N.Y. 1991) (plaintiff who "did not receive the sick leave, vacation, health insurance or other fringe benefits due other Museum employees" was an independent contractor); Velu, 666 F. Supp. 2d at 308 (same).

- **Plaintiff was not on RBC's payroll and enjoyed the benefits of an independent contractor tax status.**

At all times while performing services for RBC, Plaintiff enjoyed 1099 year-end tax treatment and had his own federal Employer ID Number.  SOMF ¶¶40-43.  RBC never performed W-2 wage withholding for Plaintiff.  Plaintiff invoiced RBC monthly on his own forms from RMCS to RBC, directed how and to where RBC should make payment, filed tax returns as a sole proprietor from 2006 to 2012, and paid self-employment taxes in those same years.  Id.  Tellingly, with every single invoice RMCS submitted, Plaintiff re-ratified the existence of his consulting business and the independent contractor relationship with RBC by explicit reference to the contracted "project" and the original August 7, 2006 Consulting Agreement.  Id., ¶38.  See Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 118 (2d Cir. 2000) (independent contractor status where defendant treated plaintiff "as an independent contractor for tax purposes, giving her a '1099' tax form rather than a 'W-2' form,

10

and not deducting or withholding taxes from her wages" ); <u>Frishberg v. Esprit de Corp.</u>, 778 F.

Supp. 793, 799 (S.D.N.Y. 1991) (same).  Further, courts routinely find that where the hired party

operates as a sole proprietorship, it is an indication of independent contractor status.  <u>Frishberg</u>,

778 F. Supp. at 796 (independent contractor was sole shareholder of corporation through which

he sold defendant's product); <u>Dole v. Amerilink</u>, 729 F. Supp. 73, 76 (E.D. Mo. 1990) (cable

television installers "operate[d] as independent self-determining businesses as a practical

reality"); <u>EEOC v. Zippo Mfg. Co.</u>, 713 F.2d 32, 33 (3d Cir. 1983) (plaintiffs were independent

contractors where, <u>inter</u> <u>alia</u>, they were free to "operate under the business form of their choice

whether it be a sole proprietorship . . . a partnership or a corporation"); <u>Thompson v. DDB</u>

<u>Needham Chicago, Inc.</u>, No. 95-7114, 1996 WL 392165, at *6 (N.D. Ill. July 11, 1996) (factors

indicating plaintiff was independent contractor included fact that Plaintiff "invoiced payment …

under the name of his business").

Finally, Plaintiff certified under penalty of perjury to the government throughout 2006 to

2012 that he operated a legitimate business as a non-employee and received tax deductions

otherwise unavailable to employees, which is the status Plaintiff now seeks in this lawsuit.

SOMF ¶¶ 40-42.  Plaintiff's repeated sworn prior representations to the government undercut, to

say the least, his claims now in this litigation. <u>See</u> <u>Deboissiere v. Am. Modification Agency</u>, No.

09-2316, 2010 WL 4340642, at *3 (E.D.N.Y. Oct. 22, 2010) ("though not quite rising to the

level of estoppel, if a plaintiff signs a tax return "under penalty of perjury" that declares

independent contractor status and seeks "numerous deductions for business purposes associated

with independent contractor status, such as travel,  entertainment, lodging, supplies, telephone

and depreciation of business assets," such a tax return may significantly impede the plaintiff's

ability to claim employee status for purposes of filing an overtime or minimum wage claim);

Browning, 885 F. Supp. 2d at 605 ("[T]he Plaintiffs all sought significant tax benefits associated with their independent contractor status in connection with [defendant], which the Court takes into serious consideration.").

In the end, Plaintiff cannot escape the overwhelming weight of the undisputed facts that demonstrate that he was properly classified under both the FLSA and NYLL as an independent contractor in 2008 and 2009.

## III.   EVEN IF PLAINTIFF COULD BE CONSIDERED AN EMPLOYEE (WHICH HE WAS NOT), HE WOULD BE STATUTORILY EXEMPT FROM ANY OVERTIME REQUIREMENTS AND STILL WOULD HAVE NO COMPENSABLE DAMAGES.

Plaintiff does not seek recovery of unpaid overtime compensation in this case. See Am. Compl., §IV, ¶62. However, even if he did, and assuming, *arguendo*, Plaintiff could demonstrate that he was an employee (which he was decidedly not), he would nonetheless be administratively exempt from the FLSA and NYLL's overtime requirements and as a result, have no wage and hour damages. See 29 U.S.C. § 207(a); 29 CFR §§ 541.400, 541.601. The FLSA expressly exempts from its overtime requirement any employee who is paid a salary and works in a "bona fide … administrative … capacity." Id.[4] The administrative exemption is satisfied in the case of an employee who is compensated "on a salary or fee basis at a rate of not less than $455 per week", 29 C.F.R. § 541.200(a), and "whose primary duty [consists of either] the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers" which "includes [work requiring] the exercise of discretion and independent judgment with respect to matters of

---

[4]     The analysis of whether exemptions are applicable to an employee proceeds identically under the FLSA and NYLL. Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 10-2603, 2011 WL 1453791, at *5 n.3 (S.D.N.Y. Apr. 13, 2011) ("New York Labor Law is nearly identical to FLSA with respect to these overtime requirements and exemptions and are analyzed in the same manner.") (internal quotation omitted).

significance." 29 C.F.R. § 541.200(a)(2)-(3). In addition, "a highly compensated employee [like Plaintiff] will qualify for exemption if [he] customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee . . . ." 29 C.F.R. § 541.601(c).[5]

Plaintiff admits that "[t]he duties of a municipal/public finance banker at RBC include evaluating and negotiating financial terms and related documentation for transactions that would commit RBC's balance sheet." Am. Compl., ¶20 n.1. He further claims that he "assumed transactions of increasing complexity and importance for the bank over time, including relatively complex and sophisticated 'Pre-Paid Gas' financings and, most noteworthy, the . . . re-structuring of a large bank-syndicated liquidity and credit enhancement facility for the State of California[.]" Am. Compl., ¶53. At his deposition, Plaintiff testified that he was involved in structuring commercial paper transactions and "was entrusted to operate with a degree of independence and responsibility" for his accounts. SOMF ¶ 29. As a result, Plaintiff's primary duties satisfy the requirements of the administrative exemption. Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 10-2603, 2011 1453791, at *6 (S.D.N.Y. Apr. 13, 2011) (plaintiff was administratively exempt where she "was given reasonable latitude in carrying on negotiation[s] on behalf of" bank and clients); O'Neill-Marino v. Omni Hotels Mgmt. Corp., No. 99-3793, 2001 WL 210360, at *9 (S.D.N.Y. Mar. 2, 2001) (employee who "negotiated contracts and price

---

[5]     An employee is deemed "highly compensated" if he earns total annual non-discretionary compensation of at least $100,000. See 29 C.F.R. § 541.601(a). Plaintiff indisputably earned more than $100,000 annually as a result of his consulting work for RBC. SOMF, ¶38. Therefore, he satisfies the "highly compensated" requirement and RBC need only demonstrate that he customarily and regularly performed any one or more of the exempt duties or responsibilities of an administrative employee.

terms with clients" was administratively exempt).  Accordingly, even if found to be a common law employee, Plaintiff would not be entitled to any overtime damages.

Similarly, Plaintiff cannot seek compensation for any minimum wage violation, as he was undisputedly compensated at an annualized rate of approximately $288,000.  SOMF ¶38.  To the extent Plaintiff contends he was denied sick pay, vacation pay and similar fringe benefits afforded to RBC employees, Plaintiff would have been considered an at-will employee and had no legally enforceable entitlement to such benefits.  SOMF ¶2.  See, e.g., Edwards v. Schrader-Bridgeport Int'l, Inc., 205 F. Supp. 2d 3, 15 (N.D.N.Y. 2002) (rejecting claim of vacation pay and other benefits as damages in employment action, and noting, "because Plaintiff did not have an employment contract, but rather was an at-will employee, he possesses no entitlement to vacation pay").[6]  Further, as addressed below at 20-21, infra, Plaintiff cannot recover for any alleged lost benefits arising under RBC's ERISA-governed benefit plans.  Finally, Plaintiff admits that he never applied for New York unemployment insurance benefits, precluding any such claim.  Id., ¶ 77.  Therefore, Plaintiff has no basis for compensatory damages arising from his FLSA and NYLL claims.

**IV.    PLAINTIFF'S ERISA CLAIM IS WITHOUT MERIT BECAUSE HE ADMITS THAT HE FAILED TO EXHAUST ADMINISTRATIVE PROCEDURES AND, EVEN IF HE HAD, THE PLANS SPECIFICALLY EXCLUDE INDEPENDENT CONTACTORS AND INDIVIDUALS CLASSIFIED AS INDEPENDENT CONTRACTORS.**

Plaintiff's independent contractor status precludes any cause of action under ERISA.

Nationwide Mut. Ins. Co. v. Mortensen, 606 F.3d 22, 32 (2d Cir. 2010) (affirming dismissal of ERISA claim because plaintiffs were not employees).  Even if Plaintiff could somehow establish that he was a common law employee (which he cannot do), his ERISA claim still fails for two

---

[6]    Of course, here, the parties entered into a contract, which indisputably did *not* provide any right to benefits.

reasons.  First, Plaintiff failed to exhaust the administrative procedures provided for in the Plans.

He admits he never filed any claim for the benefits he seeks.  SOMF ¶ 81.  Therefore, Plaintiff's

ERISA claim fails as a matter of law.  See <u>Davenport v. Harry N. Abrams, Inc.</u>, 249 F.3d 130,

135 (2d Cir. 2001) (dismissing independent contractor's ERISA claim for failure to exhaust

administrative remedies); <u>Kesselman v. Rawlings Co.</u>, 668 F. Supp. 2d 604, 609 (S.D.N.Y.

2009) (same).

Even assuming, *arguendo*, that Plaintiff was a common law employee and that he

exhausted administrative remedies, he was unquestionably not an "eligible employee" under

RBC's benefit plans.  For instance, the RBC-USA Medical Program Summary Plan Description

("SPD") unambiguously states that "persons not classified by RBC as eligible employees, such

as … contract employees, are not eligible for benefits.  RBC's classification of a person as an

employee or non-employee is conclusive and binding for purposes of benefit eligibility."

SOMF, ¶1.  The other Plans contain similar language.  <u>Id.</u>  Plaintiff was unquestionably

classified by RBC as a non-employee independent contractor – indeed, Plaintiff so alleges in his

Amended Complaint.  Am. Compl., ¶14.  Plaintiff's classification as a non-employee renders

him ineligible for any benefits under the Plans.  <u>Downes v. J.P. Morgan Chase & Co.</u>, No. 03-

8991, 2006 WL 785278, at *12-13 (S.D.N.Y. Mar. 21, 2006) (dismissing ERISA claim because

plaintiff was ineligible for benefits under plan whose language excluded "any person who is

considered by the Employer to be rendering services as or to an independent contractor").

Accordingly, Defendants should be granted summary judgment on Plaintiff's ERISA claim.

## V.   PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE OF AGE DISCRIMINATION.

Plaintiff claims age discrimination because within "days" of completing a re-structuring

project, RBC informed him that his independent contractor agreement would not be renewed.

Am. Compl., ¶61.  As an initial matter, Plaintiff may not pursue an age discrimination claim under the ADEA or NYSHRL because those laws only cover employees, not independent contractors.  See, e.g., Legeno v. Douglas Elliman, LLC, 311 F. App'x at 405 ("independent contractor position is not covered by the ADEA"); Lee v. Glessing, 51 F. App'x 31, 32 (2d Cir. 2002) ("New York's Human Rights Law cover only employees.").  For his NYCHRL claim, Plaintiff must establish that his age was a motivating factor for RBC's decision.  See Sheridan v. N.Y. Life Inv. Mgmt., LLC, No. 09-4746, 2012 U.S. Dist. LEXIS 18525, at *15 (S.D.N.Y. Feb. 9, 2012).  In the unlikely event that Plaintiff is found to be an employee under the ADEA and/or NYHRL, he bears the higher burden of establishing that "age was not just a motivating factor behind the adverse action, but rather the 'but-for' cause of it." Sotomayor v. City of New York, 862 F. Supp. 2d 226, 253 (E.D.N.Y. 2012); see also Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009); Ruszkowski v. Kaleida Health Sys., 422 F. App'x 58, 60 n.2 (2d Cir. 2011).

Under either standard, Plaintiff must first establish a *prima facie* case of discrimination by demonstrating that:  "(1) he is a member of a protected class; (2) he was qualified for the position for which he applied; (3) he was denied the position; and (4) the denial occurred under circumstances giving rise to an inference of discrimination." Ruszkowski, 422 F. App'x at 60 (citation omitted).[7]  In other words, Plaintiff must proffer admissible evidence that he was denied employment with RBC under circumstances giving rise to an inference of age discrimination. See Shortt v. Congregation KTI, No. 10-2237, 2013 U.S. Dist. LEXIS 4094, at *27 (S.D.N.Y. Jan. 9, 2013).  No such evidence exists here.

---

[7]     Plaintiff must proceed under the three-step burden shifting analysis first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Sheridan v. N.Y. Life Inv. Mgmt., LLC, No. 09-4746, 2012 U.S. Dist. LEXIS 18525, at *13-14 (S.D.N.Y. Feb. 9, 2012) (noting that New York State and New York City claims are analyzed under the same framework as ADEA claims).

A critical element of Plaintiff's *prima facie* case is that he must have actually applied for the position in question. Ruszkowski 422 F. App'x at 60.  Here, Plaintiff never applied for a position with RBC – indeed, he admitted during his deposition that there were no open positions. SOMF ¶67.  This admission dooms his claim.  See Gaffney v. Dep't of Info. Tech. & Telecomm'ns, 536 F. Supp. 2d 445, 460 (S.D.N.Y. 2008) ("[Plaintiff] cannot establish a *prima facie* case because she did not apply for either position"); Walsh v. NBC, No. 83-6102, 1987 WL 16131, at *3 (S.D.N.Y. Jan. 7, 1987) (same); Alleva v. N.Y.C. Dep't of Investigation, 696 F. Supp. 2d 273, 282 (E.D.N.Y. 2010), aff'd, 413 F. App'x 361 (2d Cir. 2011) (same).  Even if Plaintiff could clear this hurdle (which he cannot), there is still an absence of any evidence of discriminatory animus.  Mr. Shields, the "decision-maker" who never hired Plaintiff and also ultimately non-renewed his independent contractor arrangement with RBC, was himself over forty at the times in question.  SOMF ¶15.  See Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 395 (S.D.N.Y. 2012) (finding that where the decision-maker is within the age-protected class, it precludes an inference of age discrimination); Davis v. Peake, No. 08-3570, 2011 U.S. Dist. LEXIS 107380, at *19 (S.D.N.Y. Sept. 20, 2011), aff'd, 505 F. App'x 67 (2d Cir. 2012) (same); Grant v. Roche Diagnostics Corp., No. 09-1540, 2011 U.S. Dist. LEXIS 79994, at *31 (E.D.N.Y. July 20, 2011) (same).

Further, Mr. Shields was also the "same decision-maker" who initially engaged Plaintiff through RMCS in February 2008, and thereafter renewed his contract five times thereafter. SOMF ¶¶ 19, 26.  It is simply illogical to suggest that Mr. Shields developed a sudden discriminatory animus toward Plaintiff, on the basis of age, only 13 months after originally engaging Plaintiff, and only three months after last renewing his contract.  Cf., Velasquez v. Goldwater Mem'l Hosp., 88 F. Supp. 2d 257, 263 (S.D.N.Y. 2000) ("When the person who made

the decision to hire plaintiff is the same person who made the decision to fire plaintiff, it is difficult to impute an invidious motivation . . . inconsistent with the decision to hire.   [T]he inference is even weaker when the decision to terminate occurred shortly after the decision to hire."); <u>Grossman v. Dillard Dep't Stores, Inc.</u>, 109 F.3d 457, 459 (8th Cir. 1997) (granting summary judgment for employer in part because "reasonable people [could not] swallow" that employer developed discriminatory intent within just four years of hiring plaintiff).

## VI.   PLAINTIFF CANNOT REBUT RBC'S LEGITIMATE, NON-DISCRIMINATORY REASONS.

Assuming, *arguendo*, that Plaintiff can establish a *prima facie* case (which he cannot do), the burden of production shifts to RBC to proffer a legitimate, non-discriminatory reason for its actions.  Plaintiff must then show that RBC's reason is false and a pretext for age discrimination. Plaintiff's independent contractor agreement was not renewed for a fourteenth time in February 2009[8] because RBC, in a legitimate exercise of business judgment, determined that if future hiring in Municipal Finance became necessary, it would be better served by hiring at the Vice President and Associate levels.  SOMF ¶70.  Mr. Shields was also concerned about Plaintiff's ability to be managed by Mr. Sigmund given the apparent friction stemming from Mr. Sigmund's transfer into the Director position.  <u>Id.</u>, ¶71.  Indeed, Plaintiff admitted at his deposition that he did not believe Mr. Sigmund was qualified for the position.  <u>Id.</u>, ¶ 66.  Tellingly, Plaintiff's contractor role was never replaced and the first employee hired by the group did not occur until May and then at the Vice President level – a position below Plaintiff's expectations and career growth.  <u>Id.</u>, ¶¶ 75-76.

---

[8]   Importantly, Plaintiff's February 29, 2009, contract non-renewal occurred during the very heart of the U.S. and Global financial crisis.  There could hardly be a more legitimate, non-discriminatory business decision to challenge given those circumstances.

Here, Plaintiff cannot "produce 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons' presented by [RBC] were false, and that 'more likely than not discrimination was the real reason for the employment action.'" Mavrommatis v. Carey Limousine Westchester, Inc., 476 F. App'x 462, 465 (2d Cir. 2011) (citations omitted).  Plaintiff contends that RBC's decision to hire "more junior [and thereby lower-paid] employees to work in public finance" was a form of discrimination.  SOMF, ¶ 79.  However, courts in the Second Circuit repeatedly have rejected Plaintiff's argument.  See Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 117 ( 2d Cir. 1991) ("nothing in the ADEA . . . prohibits an employer from making employment decisions that relate an employee's salary to . . . the responsibilities entailed in particular positions and concluding that an employee's salary is too high"); Ashton v. Pall Corp., 32 F. Supp. 2d 82, 89 (E.D.N.Y. 1999) ("the ADEA does not prohibit an employer from acting out of a concern for excessive costs, even if they arise from age-related facts – such as that employees with long seniority command a higher salary and benefits [more] expensive than new hires"); Lorenzo v. St. Luke's –Roosevelt Hosp. Ctr., 837 F. Supp. 2d 53, 65 (E.D.N.Y. 2011) ("Hiring . . .younger workers for junior positions, without more, does not constitute age-based discrimination."); Dent v. U.S. Tennis Ass'n, No. 08-1533, 2011 WL 308417, at *8 (E.D.N.Y. Jan. 27, 2011) (same); Lewis v. Hill, No. 97-3213, 2005 WL 292748, at *7 (S.D.N.Y. Feb. 8, 2005) (same); e.g., Witkowich v. Gonzales, 541 F. Supp. 2d 572, 581-82 (S.D.N.Y. 2008) ("We are not to act as a 'super personnel department,' second guessing the merits of defendants' legitimate business decisions") (internal citations and quotations omitted), aff'd sub nom. Witkowich v. U.S. Marshals Serv., 424 F. App'x 20 (2d Cir. 2011).  Tellingly, Plaintiff admits that the term "junior" does not necessarily equate to age-based animus: "Well, junior people

means several things … In theory they could hire somebody older than me who is, in fact, junior … ." SOMF, ¶80.

Plaintiff also cites as evidence of age discrimination the fact that RBC transferred Jake Sigmund, already a full time employee, to lead the Municipal Finance group after Mr. Birr's departure in October of 2008. Am. Compl., ¶¶ 57-58. Although that decision is outside the statute of limitations,[9] RBC selected Mr. Sigmund due to his real estate background and strong credit underwriting skills. SOMF, ¶63. At the time, a large portion of RBC Municipal Finance's loan book was tied to real estate exposure (approximately 15% of notional commitments and 30% of the overall client base) and there were growing concerns, in light of the historic market downturn and associated property devaluation occurring in late-2008, about increasing loan exposure relating to real estate. Id. In RBC's estimation, Plaintiff had no comparable work experience relating to real estate. Id., ¶64.

In sum, Plaintiff can offer no record evidence to demonstrate that the reasons underlying RBC's decision were a pretext for discrimination. Rather, he relies on his own subjective impressions of Mr. Sigmund's suitability for the position and attacks RBC's exercise of business judgment. Neither avenue is sufficient to rebut RBC's legitimate reasons for its decision to hire Mr. Sigmund. See, e.g., Alvarez v. Nicholson, No. 03-4173, 2005 U.S. Dist. LEXIS 45744, at *17 (S.D.N.Y. Aug. 3, 2005) ("Plaintiff's personal belief that [he] was more qualified for the position … is therefore insufficient to rebut Defendants' nondiscriminatory reason…");

---

[9]   An untimely "discriminatory act … may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is **merely an unfortunate event in history which has no present legal consequences**." United Air Lines v. Evans, 431 U.S. 553, 558 (U.S. 1977) (emphasis added). However, "because, as [noted] above, the claim based on [Mr. Sigmund's transfer] fails for independent reasons, the background facts are irrelevant." Curto v. Edmundson, 392 F.3d 502, 504 (2d Cir. 2004).

Kelderhouse v. St. Cabrini Home, 259 A.D.2d 938, 939 (3d Dep't 1999) (dismissing NYSHRL age discrimination claim where "plaintiff merely argues that he was replaced with someone 20 years his junior and that he 'steadfastly believe[s] he was terminated because of his age. These conclusory statements are insufficient to defeat defendants' motion."); Pasha v. William M. Mercer Consulting, Inc., No. 00-8362, 2004 U.S. Dist. LEXIS 1226, at *25 (S.D.N.Y. Feb. 2, 2004) (explaining "it is not the Court's role to police the employer's judgment and ensure that the best qualified person is hired"), aff'd, 135 F. App'x 489 (2d Cir. 2005).

## VII.   PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE HE WAS NOT SUBJECTED TO ANY ADVERSE ACTION.

Plaintiff asserts a retaliation claim premised solely on RBC's February 5, 2010 letter to RMCS which, per the terms of the consulting agreement between RBC and RMCS, reserved its right to potentially seek indemnification for "any and all employment benefit obligations allegedly owed by RBC to RMCS employees, arising from the parties' prior consulting relationship" related to defending Plaintiff's EEOC charge. SOMF ¶ 82. There is no question that Plaintiff's independent contractor agreement contained an indemnification clause and Plaintiff admits that RBC subsequently withdrew its request for reimbursement for those costs on June 28, 2011. Id., ¶ 83. Plaintiff further admits that RBC issued no subsequent notice. Id., ¶84. Thus, this claim fails as a matter of law because no reasonable person in Plaintiff's position would be dissuaded from pursuing his then-pending EEOC charge. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (U.S. 2006) ("a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.) (quotation omitted). "Context matters" and Plaintiff cannot escape the

21

undisputed facts that RBC never sought indemnification under the Agreement and soon thereafter waived its right to do so. Id., at 69; SOMF, ¶¶82-84.

Even assuming, *arguendo*, that the letter was not just the **reservation** of a contractual right (it was not even the **enforcement** of that right) it is of no moment because Plaintiff continued to pursue his EEOC charge and ultimately filed a complaint. SOMF, ¶¶85-87. Indeed, there is no evidence of an identifiable adverse effect at all to which Plaintiff can point as a result of RBC's alleged retaliation. Further, Plaintiff's retaliation claim fails because he cannot prove that RBC's legitimate non-retaliatory reason for reserving its contractual rights – *i.e.*, the independent contractor agreement – was merely a pretext for retaliation. See Leacock v. Nassau Health Care Corp., No. 08-2401, 2013 WL 4899723, at *11 (E.D.N.Y. Sept. 11, 2013) ("[D]uring the final stage of the burden shifting frame-work, the plaintiff must show that retaliation was a but-for cause of the adverse employment action.") (citation and internal quotation marks omitted); e.g., Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1406-08 (10th Cir. 1992) (affirming holding that a third-party complaint for indemnification did not constitute unlawful retaliation under the FSLA because it was not objectively baseless). For these reasons, Plaintiff's retaliation claim should be dismissed.

## VIII.   PLAINTIFF CANNOT SUSTAIN A CLAIM FOR EMOTIONAL DISTRESS OR PUNITIVE DAMAGES.

### A.   Plaintiff's Evidence Of Emotional Distress Is Patently Insufficient To Support An Award of Damages.

As an initial matter, Plaintiff may not recover damages for emotional distress under the ADEA. Courtney v. City of New York, 20 F. Supp. 2d 655, 660 (S.D.N.Y. 1998) ("The ADEA allows recovery of back and front pay and liquidated damages, but does not allow recovery for pain and suffering, emotional distress, humiliation, or injury to professional reputation."). Though such damages are available under the NYSHRL or NYCHRL, Plaintiff can offer nothing

in support of such an award save his own testimony that, as a result of the non-renewal of the consulting agreement, he is "living with stress, financial stress all the time . . . ." SOMF, ¶89. Plaintiff has not sought any medical treatment. Id., ¶90. This is plainly not enough. See, e.g., Katt v. City of New York, 151 F. Supp. 2d 313, 350 (S.D.N.Y. 2001) (emotional distress award was warranted where plaintiff's psychologist "testified that in her professional opinion, [plaintiff] suffers from such symptoms as a direct consequence of the sexual harassment…"), aff'd in relevant part sub nom. Krohn v. New York City Police Dep't, 60 F. App'x 357 (2d Cir. 2003); Ruhling v. Newsday, Inc., No. 04-2430, 2008 WL 2065811, at *8 (E.D.N.Y. May 13, 2008) ("the evidence establishing plaintiff's emotional distress was not limited to the plaintiff's testimony, but was corroborated by the testimony of her physician and physical therapist").

**B.      Plaintiff Offers No Evidence To Support An Award Of Punitive Damages.**

As an initial matter, "the ADEA does not allow for punitive damages in any form." Greenbaum v. Handelsbanken, 67 F. Supp. 2d 228, 265 (S.D.N.Y. 1999). Plaintiff is similarly unable to recover punitive damages under the NYSHRL. Farias v. Instructional Sys., Inc., 259 F.3d 91, 101 (2d Cir. 2001) ("It is undisputed that the New York State Human Rights Law does not provide for punitive damages."); Syrnik v. Polones Constr. Corp., 918 F. Supp. 2d 262, 265 (S.D.N.Y. 2013) (same). Further, Plaintiff may pursue punitive damages under the NYCHRL only "where the defendant has engaged in intentional discrimination and has done so with malice or with reckless indifference to the . . . rights of an aggrieved individual." Caravantes v. 53rd St. Partners, LLC, No 09-7821, 2012 WL 3631276, at *25 (S.D.N.Y. Aug. 23, 2012). "A plaintiff can satisfy this burden by presenting evidence that [1] the employer discriminated (or retaliated) against him with 'conscious knowledge it was violating the law,' or [2] that it engaged in "egregious' or 'outrageous' conduct from which an inference of malice or reckless indifference could be drawn." Id. (quoting Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556,

573 (2d Cir. 2011)).  Critically, "[i]t is the plaintiff's burden to prove by a preponderance of the evidence that the employer acted with malice or reckless indifference, or engaged in egregious and outrageous conduct—and not the employer's burden to disprove it."  Id.  When asked at his deposition, Plaintiff was unable to point to any conduct by RBC that could give rise to a punitive damage award.  SOMF, ¶91.  At most, he testified that "I believe the actions of the defendants . . . was willful, okay, was willful and it caused me significant harm."  SOMF, ¶91.  Such bald assertions, unsupported by any evidence in the record that the defendants acted with malice, do not suffice to support an entitlement to punitive damages.  Short v. Manhattan Apts., Inc., 916 F. Supp. 2d 375,402 (S.D.N.Y. 2012) (punitive damages unavailable "since there is no evidence of malice on the part of either [defendant]"); Clark v. Gotham Lasik, PLLC, No. 11-01307, 2013 WL 4437220, at *6 (S.D.N.Y. Aug. 20, 2013) (plaintiff's conclusory statements that defendant's conduct was "egregious" and caused her anxiety were insufficient to support award of punitive damages).

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully that the Court grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint in its entirety, with prejudice.

Dated: October 25, 2013

Respectfully submitted,

James P. Walsh (JW-6647)
August W. Heckman III (AH-2566)
MORGAN LEWIS & BOCKIUS, LLP
502 Carnegie Center
Princeton, NJ  08540
*Attorneys for Defendants Royal Bank of Canada, RBC USA Holdco Corporation, RBC Capital Markets LLC*