UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID SELLERS,

               Plaintiff,

        v.

ROYAL BANK OF CANADA, RBC USA
HOLDCO CORPORATION, RBC
CAPITAL MARKETS CORPORATION,
LLC, and JOHN DOES 1-5,

               Defendants.

Case No. 12-Civ-1577 (KBF)

**Document Electronically Filed**

DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

By:

James P. Walsh, Jr., Esq.
August W. Heckman, Esq.
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
Tel:  (609) 919-6696

*Attorneys for Defendants*

From approximately August 2006 through February 2009, Plaintiff, on behalf of his consulting company, RMCS, contracted with Defendants to provide consulting services under a series of successively-renegotiated agreements. Based on this contractual relationship, as well as other undisputed evidence of Plaintiff's independent contractor status – *e.g.*, his simultaneous work as an independent contractor for another bank – Defendants filed the instant Motion. In his Opposition and Response to Defendants' Rule 56.1 Statement of Undisputed Facts, Plaintiff does not – and cannot – point to any *evidence* to support his assertion that a material fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Rather, Plaintiff relies on unsupported conclusions, irrelevant legal arguments, and the bare allegations of the Amended Complaint. The thrust of Plaintiff's opposition is summarized in his own words:

> If there was any truth in these statements whatsoever then a "reasonable person" would wonder how Plaintiff's Amended Complaint made it this far. Obviously, this complaint could not have survived without compelling evidence …

Pl. Br., 12. The Amended Complaint "survived," however, because it is subject only to the notice pleading requirements of Rule 8. Under Rule 56, Plaintiff must adduce evidence of material disputed facts, which he has not done. Instead, Plaintiff actually *admits* the material *facts*, but repeatedly contends that his hodge-podge of claims should survive because the "underlying premise" of Defendants' Statement of Undisputed Facts – *i.e.*, that Plaintiff was "properly classified to begin with" – is "in dispute." Pl. Br., 4. When stripped of the mischaracterizations and immaterial and irrelevant arguments that purportedly support Plaintiff's assertion of a "dispute," however, it is clear that Plaintiff has admitted Defendants' Statement of Undisputed Facts. As a result, the Court should grant Defendants' Motion in its entirety.

## I.    THE UNDISPUTED MATERIAL FACTS ESTABLISH THAT PLAINTIFF WAS AN INDEPENDENT CONTRACTOR.[1]

Plaintiff does not challenge the applicable tests and relevant factors set forth in Defendants' brief, but instead attempts to explain away or minimize the uncontroverted evidence and shift the Court's focus to the largely irrelevant facts that he was not required to bring his own tools to work (as a banker), that he generally worked during business hours, and that he worked from Defendants' office. Pl. Br. 13-20. While such facts may be relevant to the independent contractor analysis if Plaintiff were a carpenter or plumber, they are wholly irrelevant here, where Plaintiff performed services in a highly-regulated industry. See, e.g., 16 C.F.R. § 314.1, et seq. (requiring financial institutions to "maintain[] reasonable administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of customer information"). Against this backdrop, the fact that Plaintiff used Defendants' protected computer network and communication systems is not surprising – indeed, it would be surprising if he did not. Moreover, Plaintiff does not dispute that he was an "experienced banker" and that his experience and skill were necessary for the completion of his tasks/projects/assignments. SOMF ¶¶ 18, 29; Am. Compl., ¶ 53. In this context, Plaintiff's experience and skill were his "tools" and such "tools" weigh in favor of finding an independent contractor relationship. Williams v. CF Medical, Inc., 2009 WL 577760, *6 (N.D.N.Y. Mar. 4, 2009) (finding independent contractor relationship despite the provision of materials, supplies, and letterhead because plaintiff's "salesmanship, which is the principal skill used to perform his work, was not provided by the

---

[1]    Although exceeding the Court's page limitation by 6 pages, the Opposition fails to address numerous facts and legal authorities cited in Defendants' opening brief. Elsewhere, Plaintiff makes plainly irrelevant arguments or does not support his arguments with record evidence. Constrained by the applicable page limitation, Defendants have not reiterated arguments made, or authorities cited, in their opening brief. Defendants address herein only those arguments made by Plaintiff that at least appear on point or which run thematically throughout his Opposition.

hiring party") (citation omitted); <u>Tagare v. Nynex Network Sys. Co.</u>, 994 F. Supp. 149, 157

(S.D.N.Y. 1997) ("It is undisputed that [plaintiff] was hired for his specialized skills and thus

that this factor weighs in favor of independent contractor status."). On December 12, 2013, the

IRS issued a formal determination – binding on the IRS – in response to Plaintiff's submission

(<u>see</u> Pl. Br. 4), holding that Plaintiff "**shall be found to be an independent contractor** … ."

even though RBC "provided all significant materials and a workspace to the worker [*i.e.*,

Plaintiff]." <u>See</u> December 20, 2013 Declaration of August W. Heckman III ("Heckman Decl.

II") Exhibit A (Determination of Worker Status for Purposes of Federal Employment Taxes and

Income Tax Withholding ) (emphasis added).

Plaintiff's attempt to minimize or ignore other relevant facts likewise cannot withstand

scrutiny.[2] For example, Plaintiff cannot dispute that he performed services as an independent

contractor for another bank while he was engaged with RBC. Instead, he compares the amount

of time he spent providing services for both banks. Pl. Br., 7-8. Plaintiff's comparison is legally

meaningless; the dispositive point remains that he was "free to engage in other employment" and

he did so engage. <u>Legeno v. Douglas Elliman</u>, LLC, 311 F. App'x 403, 405 (2d Cir. 2009).

Indeed, the IRS observed that "[n]othing in the agreement [between Plaintiff's consulting

---

[2]     Without pointing to any record evidence, Plaintiff contends he "has always claimed that
the … misclassification … was willful and, therefore, a three year statute of limitations applies."
Pl. Br. at 9. Such a conclusory assertion, no matter how long it is made, "is insufficient to meet
[his] burden." <u>Gustafson v. Bell Atl. Corp.</u>, 171 F. Supp. 2d 311, 323-324 (S.D.N.Y. 2001)
("Plaintiff merely concluded that willfulness and recklessness existed, without pointing to any
concrete evidence in the record. Accordingly, plaintiff failed to prove willfulness sufficient to
implicate the three-year statute of limitations"). Plaintiff also argues that the EEOC concluded
the FLSA claims are not time-barred and that these claims are subject to a tolling agreement. Pl.
Br. at 9. Even if he could cite record evidence germane to these assertions, the EEOC does not
enforce the FLSA, <u>see</u> http://www.eeoc.gov/laws/other.cfm (listing the FLSA as a law "not
enforced by the EEOC"), the Tolling Agreement would not save claims under the FLSA's two-
year statute of limitations, and all of Plaintiff's claims fail on the merits.

company and RBC] stated the worker [*i.e.*, Plaintiff] could not provide services to others."
Heckman Decl. II, Ex. A.  Tellingly, the IRS found Plaintiff to be properly classified as an
independent contractor based solely on the *opportunity* to provide services to others.
Apparently, Plaintiff failed to disclose to the IRS his contemporaneous agreement with Credit
Suisse.  Id.; see also Sellers Aff., Ex. 7.

Plaintiff also argues – without any attempt to distinguish the authorities cited in
Defendants' brief – that his "hours in the office were indistinguishable from the hours worked by
a regular employee."  Pl. Br. 6.  But, Plaintiff did not perform his services in isolation and his
interactions with internal and external constituents generally entailed that he be available during
normal business hours. Def. Br., 7.  The material undisputed facts, however, establish that
Plaintiff was never required by RBC to adhere to a specific schedule.  Indeed, Plaintiff admits he
had no set schedule, took vacation and personal days at his own convenience, and often declined
to provide RBC management with notice of his planned days off -- citing his non-employee
status as a "consultant."[3]  SOMF ¶¶ 50, 54.

Further, while Plaintiff attempts to dispute the number of times his independent
contractor agreement was extended, he cannot dispute the fact that his relationship existed in
successive three-month periods.  SOMF ¶ 26.  Again, Plaintiff makes no attempt to address, let
alone distinguish, the cases finding limited duration contracts, such as his, indicative of an
independent contractor relationship.  Def. Br. 9.  Plaintiff similarly makes no effort to dispute

---

[3]  Plaintiff points to invoices as proof of the hours he worked, and castigates Defendants for
relying on draft instead of final versions. Id.  Regardless of the version, Plaintiff's invoices prove
Defendants' point:  the hours Plaintiff chose to work are clearly un-tethered to *any* schedule, as
his arrival and departure times vary, the hours worked vary, there is no record of when Plaintiff
took lunch or other breaks throughout the day, and he worked in and out of the office.

that he was not integral to RBC's business or that he was anything but fungible.[4] Id.,

Plaintiff admits he did not receive paid vacation or sick days during his engagement with RBC and that he sought tax treatment as an independent contractor and had his own federal Employer ID Number. SOMF ¶¶ 40-43, 48. Plaintiff's effort to minimize, but not dispute, these facts falls far short of establishing a material fact "genuinely disputed." Fed. R. Civ. P. 56(c)(1); Pl. Br. 19-20. Neither does Plaintiff attempt to distinguish the long line of legal authority that holds that the existence of such facts weighs heavily in favor of independent contractor status. Def. Br. 10-12. Rather, Plaintiff argues that his favorable non-employee tax deductions and related filings should now be ignored because he filed IRS Form SS-8 on April 11, 2012, requesting a determination of his independent contractor status. Plaintiff's transparent post-litigation strategy is wholly irrelevant to his then-contemporaneous filings and admissions. Plaintiff represented to the IRS that he was an independent contractor when he filed his taxes, but now wishes to disavow this representation to save his claim. In the SS-8, Plaintiff spun the same story as he did in the Complaint and, regardless, the IRS determined that Plaintiff "shall be found to be an independent contractor … ." Heckman Decl. II, Ex. A.

In short, Plaintiff's claim collapses under the overwhelming weight of the undisputed facts and applicable case law, which demonstrate that he was properly classified under both the FLSA and NYLL as an independent contractor.

## II.   EVEN IF MISCLASSIFIED, PLAINTIFF HAS NO COMPENSABLE DAMAGES.

Plaintiff does not address and therefore concedes that if found to be an employee, he would nonetheless be administratively exempt from the FLSA/NYLL overtime requirements

---

[4]      Plaintiff asserts that he was asked by Mr. Shields to "complete a performance evaluation for an employee in the Municipal Finance Team." Pl. Aff. ¶ 27. Plaintiff overstates his involvement, which was limited to providing feedback on a "questionnaire" to be reviewed by Mr. Shields. See Pl. Ex. 59.

and, as a result, would have no wage and hour damages.  Def. Br. 12-14; see also Douglas v.
Victor Capital Grp., 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (deeming claims abandoned where
plaintiff failed to provide opposition argument).  Similarly, Plaintiff provides no legal or factual
support for the recovery of any alleged sick pay, vacation pay and similar fringe benefits
afforded to individuals classified as employees.  Gustafson, 171 F. Supp. 2d at 329-330 ("no
statutory provision requires employers to pay these expenses to their employees").  Accordingly,
even if Plaintiff was misclassified, he suffered no compensable damages.

### III.  PLAINTIFF'S ERISA CLAIM FAILS BECAUSE THE PLANS EXCLUDE INDIVIDUALS CLASSIFIED AS INDEPENDENT CONTRACTORS.

Plaintiff argues against dismissal of his claim for ERISA-governed benefits on the
grounds that the written terms of the governing Plans do not control his right to benefits.  Pl. Br.,
10 (citing Vizcaino v. Microsoft Corp., 97 F.3d 1187 (9th Cir. 1996), vacated by 120 F.3d 1006
(9th Cir. 1997)).  Plaintiff is simply wrong. Defendants demonstrated that the terms of the
governing ERISA Plans exclude Plaintiff, even if he is found to have been a common law
employee.  See Def. Br. 14-15.  Plaintiff provides no record evidence to dispute the terms of the
Plans.  Courts have recognized that "[e]ven if . . . plaintiff is a common law employee under
ERISA, it does not follow that he is automatically entitled to benefits."  Gustafson v. Bell Atl.
Corp., 171 F. Supp. 2d 311, 321 (S.D.N.Y. 2001) (deferring to plan administrator's interpretation
of plan terms, finding plaintiff-independent contractor ineligible for benefits) (citations omitted);
Scruggs v. ExxonMobil Pension Plan, 585 F.3d 1356, 1365 (10th Cir. 2009) (deferring to plan
administrator's interpretation, finding 21-year service independent contractor ineligible for
benefits under terms of the plan).[5] Moreover, in each of the three cases cited above, the plaintiffs

---

[5]      In analogous situations, the Supreme Court repeatedly has enforced the written terms of a
plan.  See, e.g., Heimeshoff v. Hartford Life & Accident Co., 571 U.S. __, slip op. at 8 (Dec. 16,

submitted a claim for benefits to the claim administrator as required by the plan terms and the statute.  Accordingly, Defendants should be granted summary judgment for two reasons:  (1) Plaintiff admittedly failed to exhaust administrative remedies and (2) the terms of the plan exclude individuals classified as independent contractors from eligibility for benefits.

## IV.   PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE OF AGE DISCRIMINATION OR PRESENT ANY RECORD EVIDENCE TO REBUT RBC'S LEGITIMATE, NON-DISCRIMINATORY REASONS FOR NOT RENEWING HIS INDEPENDENT CONTRACTOR AGREEMENT.

Plaintiff cannot dispute that he never applied for an open position and cannot identify a single open position for which he was passed over.[6]  Def. Br. 17; Pl. Br. 22.  Plaintiff also cannot dispute that Mr. Shields, the "decision-maker," was himself over forty at the times in question. Def. Br. 17-18 (citing cases).  Similarly, Plaintiff does not dispute that Mr. Shields was also the "same decision-maker" who initially engaged Plaintiff through RMCS in February 2008, and thereafter renewed his contract *five* times.  SOMF ¶ 19, 26, 68.  Instead, Plaintiff speculates that "[a]n individual such as Mr. Shields may have many different motivations and pressures in the workplace to make employment decisions ..." and for this reason, the "'same actor' defense should not be accepted as a substitute for a thorough factual inquiry." Pl. Br. 24-25.  Plaintiff continues by theorizing – despite Defendants' interrogatory responses and letters to the Court identifying the decision-makers – that "there were likely multiple decision makers" and that "only one employee of RBC has to have had bias against Plaintiff because of his age." Id., 25.

---

2013) ("[W]e have recognized the particular importance of enforcing plan terms as written in § 501(a)(1)(B) claims.").

[6]     As a threshold matter, Plaintiff does not argue that the ADEA or NYSHRL apply to independent contractors.  Def. Br. 16.  Instead, Plaintiff appears to make an estoppel-like argument, positing that because this issue was raised by Defendants in their response to his EEOC Charge and the EEOC continued to investigate, they are barred from raising the argument. Pl Br. 20.  Plaintiff cites no authority for this proposition because none exists.  Further, the EEOC never made any determinations with respect to Plaintiff's Charge.  SOMF ¶85.

This falls woefully short of the record evidence needed to survive summary judgment.[7]  <u>See</u> <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) ("A party may not rely on mere speculation or conjecture … [m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citations omitted).

Even if he had established a *prima facie* case of age discrimination (which he failed to do), Plaintiff failed to present any record evidence to rebut Defendants' legitimate, non-discriminatory reason for not renewing the contractual relationship.  Def. Br. 18-21.  Instead, Plaintiff attempts to draw attention away from his circumstances and focuses on others in the group.  Pl. Br. 23.  For example, Plaintiff argues that ***his*** contract non-renewal was motivated by age-based animus because he "believes that if the qualifications of Mr. Sigmund were evaluated at the time of his promotion [to a position Plaintiff admittedly never applied to and that occurred outside the statute of limitations] in terms of the industry standard requirements [of which there is no record evidence] for the position of head of the Municipal Finance team [which, the record evidence shows, was not the position Plaintiff believes it to be (<u>see</u> Sellers Aff., ¶ 11)] … his experience would have been found inadequate for that job."  Pl. Br. 23-24.   Plaintiff's subjective beliefs are irrelevant.  Def. Br. 19.

Plaintiff also references the alleged terminations of employees who allegedly reported to Mr. Shields who were over the age of forty at the time.  Pl. Br. 27.   Not only does the record fail to include any evidence that these individuals were similarly-situated to Plaintiff, there is no

---

[7]      Plaintiff also argues that Defendants failed to produce documentary evidence to support Mr. Shield's reasons.  Pl. Br. 25.  First, there is no requirement to reduce such reasons to writing. Second, Plaintiff is simply wrong.  Defendants produced several documents that buttress the legitimate, non-discriminatory reasons.  Of course, Plaintiff would have known this had he actually reviewed Defendants' August 15, 2013 document production or at least attempted to do so before November 20, 2013.  <u>See</u> Heckman Decl. II, ¶ 3.

evidence whatsoever concerning their respective terminations, let alone that age played any role. Plaintiff's baseless finger pointing is not enough to establish the required showing of pretext. See Rommage v. MTA Long Island R.R., No. 08-836, 2010 WL 4038754, at *9 (E.D.N.Y. Sept. 30, 2010) (granting summary judgment because plaintiff could not establish pretext by pointing to defendant's treatment of other employees); Bailey v. Synthes, 295 F. Supp. 2d 344, 356 (S.D.N.Y. 2003) ("[O]ther employees' allegations that their adverse employment experiences were the product of discrimination are insufficient to rebut [defendant's] proffered reason").

## V.   PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE HE CANNOT ESTABLISH THAT HE SUFFERED AN ADVERSE ACTION AND CANNOT REBUT RBC'S LEGITIMATE NON-RETALIATORY REASON.

In their opening memorandum, Defendants established that RBC's reservation of its right to *potentially* seek indemnification from RMCS was not retaliation. Def. Br. 21-22. Indeed, the terms of the letter speak for themselves and show one company reserving a contractual right – which Plaintiff does not dispute exists (see SOMF ¶ 10) – with another company. Further, RBC copied Plaintiff's counsel (at the time) on the letter and called the issue of legal representation to his attention in the letter as well. SOMF ¶ 82. Hardly the actions of a company intending to "threaten and intimidate" Pl. Br. 29. Indeed, such a letter is the *raison d`detre* for the provision.

Instead of addressing the undisputed facts or the law, Plaintiff posits that it's an "established fact that RBC retaliated against him" because the EEOC so stated in its May 16, 2011 letter. Pl. Br. 28. The EEOC's letter does not even constitute a determination after investigation, let alone warrant deference by the Court. See Daigle v. West, 225 F. Supp. 2d 236, 247 (N.D.N.Y. 2002) ("[T]here should be no confusion that [EEOC investigators] cannot usurp the judiciary's role in determining whether there is a genuine issue of material fact"). Indeed, there is no substance in the EEOC's letter because, among other things, the EEOC failed to explain how, in light of the parties' contractual relationship including an express

indemnification provision, RBC's letter could constitute unlawful retaliation under Title VII instead of its lawful reservation of a contractual right.

**CONCLUSION**

For all of the foregoing additional reasons, Defendants respectfully that the Court grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint in its entirety, with prejudice.

Dated:  December 20, 2013

Respectfully submitted,

James P. Walsh, Jr. (JW-6647)
August W. Heckman III (AH-2566)
MORGAN LEWIS & BOCKIUS, LLP
502 Carnegie Center
Princeton, NJ  08540
*Attorneys for Defendants*